Good morning, Your Honors. If it pleases the Court, Thomas I. Rozier, representing the appellant, Jag Precision, Inc. This case stems from allegations of common law trade dress infringement by the plaintiff F. N. Herschel, which manufactures firearms. The two of the guns that are designated M249 were designed to military specifications, and so they are clearly, in my mind, serve a utilitarian advantage, or in simple English, a functional purpose. They cannot serve as trade dress. This is a sort of strange case, because you're not manufacturing, or your clients are not manufacturing military guns. You're manufacturing airsoft guns. That is a true statement. I'm sorry? Yes, that's correct. And we have two plaintiffs, as I understand it, one of whom manufactures airsoft guns, and one manufactures, is the original manufacturer. Yes. Right? And so are we considering the function, why are we considering the functionality as a military gun, as opposed to the functionality as an airsoft gun? Because the trade dress rights stem from the military weapons that have had the use of this for years, whereas the other plaintiff, Cybergun, only obtained a license to manufacture replicas of airsoft rifles in the mid-2010, and only began to manufacture and sell those airsoft rifles in 2011, whereas my client was... But you're using it as an airsoft gun. And then so is Cybergun. Cybergun is using it as an airsoft. Right. Cybergun is also using it as an airsoft replica. But they only started selling it in 2011. My client was obtaining and purchasing, selling these airsoft rifles, going back to at least 2005, without ever one word of anything from either plaintiff saying, no, don't do this. What's even more egregious is that the original company that sold my client the airsoft rifles is a company called Spartan Imports, which they induced my client to buy these guns, telling him, there's a good market for this. For two and a half years, Spartan Imports sold my client these airsoft rifles without anybody... If I understand it, counsel, neither to the district court nor to us are the parties arguing that, well, because we're airsoft guns, we don't have to worry about the trade dress on the military guns, correct? Because we're in a different market or something of that nature. That's not the argument being made, if I understand. No. The argument that they made was that the military rifles had the trade dress. The airsoft company that licensed it takes by virtue of that. But the egregious portion that I started to mention was... And you're not arguing that because it went from military rifle to airsoft, it's a whole different ballgame. Your dispute is whether the military rifle really has a trade dress. That's correct. And the fundamental feature is that... Let me finish my first one, then I'll go on to the next. Spartan Imports induced my client to buy these products, the ones that are enjoined by the court. Spartan Imports and my client had a disagreement in 2007. Spartan and my client then had to go to another source because the market had been established for these guns. Now, Cybergun buys Spartan Imports in 2010. In effect, they're suing my client for their predecessor having induced them to buy and purchase exactly the same guns that they're claiming my client is violating trade dress rights in. Now, here is the fundamental error that I believe the court should reverse on the decision. Specifically, in order to prove trade dress, the first fundamental rule is you have to prove a utilitarian advantage that is functional. And here's where I believe that I'm going to quote the court's reasoning, which we believe is an error and needs to be reversed. It appears on the excerpt of the record on page 9. I'm quoting from the ruling. Plaintiffs have successfully met their burden in establishing that the overall product configuration serves a non-functional purpose, i.e., it identifies upon sight the firearm in question as a specific weapon made by a specific manufacturer. In effect, we prove clearly, and I had a handout that I asked the clerk to give you so you would see that, and there's supporting declarations of David N., who is an expert with over 12 years' experience in airsoft, and behind that, a supporting declaration of Howard Kent, a firearms expert and a knowledgeable firearms person for decades, showing that every single feature of the gun is utilitarian and serves a utilitarian advantage. And I also, the pictures show the same utilitarian advantage on the airsoft. Wasn't there counter-evidence to that? There was evidence to the fact that, well, we had clear evidence that there was functionality. They try to argue no, that there's no functionality to it because it has an ornamental value. But from just a practical, common-sense point of view, military weapons or firearm weapons are not designed to be ornamental. They serve a function to protect our soldiers. I thought there was a counter- I mean, I thought there was some evidence that supported their position, that there was some distinctiveness to this. No. I believe what happened was that the argument was it was a secondary meaning. They had a declaration from somebody from the military manufacturer. Yes. Basically, their argument was, and the judge's reasoning was that the overall – even though either of the elements were clearly functional and utilitarian, the overall configuration lent itself to be non-functional because it had a secondary meaning. He went to the second step and combined that with the first step. I'd like to cite to the court – I'm sure you're familiar with it – this court's own ruling. And this is a case of Sequel, S.A. v. Wong Chi, Shenzhen Construction Machine Company, Fed 3677. It was a 9th Circuit 2012 decision. It held that at the core of the standard for trade dress protection is the requirement of non-functionality, which is based on the judicial theory that there exists a fundamental right to compete through the imitation of a competitor's product, which can only be temporarily denied by the patent or copyright laws. I also want to emphasize that neither plaintiff has a design patent on any of the weapons at issue in this case. Neither plaintiff has applied to register for trade dress. My client had been – and we also have a latches defense – my client had been selling these airsoft rifles going back to at least 2005, sometimes earlier, the first time the plaintiff made an allegation. What is your understanding of – this is a preliminary injunction now. What is our standard of review with regard to this functionality question now? Is it a factual question? Is it a legal question? Isabel, well, okay. The answer is that a district court necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact. A decision is based on the – on an error, on a legal standard if it did not employ the appropriate legal standard. I understand that he has a stray sentence, but in the rest of the opinion, he seems to understand what he's looking for in terms of functionality. So the question is, is that a fact that we review for clear error? Yes, because we clearly prove, as you'll see on the record, that every single element of each of the weapons at issue, both the firearms and the airsoft of the plaintiffs serve a utilitarian function. And basically, therefore, if you go to the ruling of this Court, if it serves a functional purpose, it cannot serve as a trade dress. What do you do with a case like Fuddruckers, then? Well, basically – Where the things – where we said that even if there are a number of functional elements, if you put a bunch of functional elements together, you might have a trade dress anyway. Well, the issue is if you look at the functional elements on the weapons, those functional elements are also on the – on the overall outline, whether it be a Picatinny rail, a stock, a scythe, or the hand grips. Every single one of the exterior features of these weapons serve a functional purpose. Well, it's, of course, true. I gather it's true. I don't know much about guns, but that a gun has to have its trigger, and it has to have a handle, and it has to have a sight, and it has to have a way of moving the bullets through, and all of those are functional. But that can't be the answer to the question. The question is, in getting all those things done, does it do it with no sort of extraneous aesthetic elements, or does it – and I don't even know how you do it with no extraneous elements. It's kind of a silly question in a way. I mean, you have a handle. It's either round or square, and you have to make a choice about that. And even if you choose the round because it works better, it's still how round? So at some point, something kicks in that is not functional. Well, the issue is that certainly for the M249s, these were made to military specifications. The military specifically focuses on having the most efficient, effective weapon possible to protect our soldiers in battle. Suppose you do all that, and then you paint it with – you have an absolutely perfectly functional thing, and then you paint it with little stars all over it. Well, I suppose you could say the stars are pretty, but there are no such things in the weapons at issue in this case. So it can't be the answer to the question that this is a perfectly functional gun. That's right. It can – if it's perfectly functional, which is what the military wants, and also on the P90, it's a security weapon. It has to be perfectly functional. Well, the military is also concerned about psychology, I understand. And they probably like it if the gun – when a soldier looks at it and says, gosh, that's a beautiful looking gun. Boy, that's just – that's just the most beautiful thing I've ever seen. I want that in my hands. I just feel – I'm going to feel good. Well – Historically, at least, if we go back far enough in history, weaponry has always had that aspect. Well, in this case – I don't know that this doesn't have any of that aspect. Your opponents say it does. The point is that the weapon was under a competitive bid because the – and I don't want to run out of time. I want to at least – You want to save some time? You're down to three minutes, 15 seconds. Okay. Okay. So basically, the military wanted to unify all of the guns so they don't have a multiple of guns. Their purpose was to have a functional weapon that basically served certain purposes. You had to have a gun that served so that men of all hands, the large, small, could have the same gun. They wanted an oversized trigger so you could have your thumb go into the oversized trigger guard wearing a glove. You have what's called a para, which folds so you can jump out of an airplane. I mean, none of this was done for – and typically – I don't know, Judge, your military experience, but I'm not aware of any military saying to a soldier, gee, would you like this gun or would you like that gun? The soldier is given the gun, which is the best gun to protect the soldier in battle. And the soldier doesn't have a selection of two or three. He's given the gun. And the gun basically is a functional gun that serves maximum protection, maximum efficiency, and maximum ability to protect the soldier in battle. And in the case of the P90, it has a security weapon. It is entirely functional. I didn't have a chance to go through the DisFactors case, which of course you're all familiar with. But it's the utilitarian feature that's number one. Are there alternatives? Yes, there may be, but the gun is integral to itself. You don't change one part and leave everything else unchanged, as Howard Kent says in his declaration. You start changing one part, you've got to change everything. It's all integral to itself. Also, one of the features that the military wanted was the least expensive gun. And that deals with one of the DisFactors as well. Basically, you meet the specifications. You meet the criteria that the military tells you it wants. And if you have the best bid, then they'll award you the contract. That's what happened with the two .49s. It's essentially to say that the gun is pretty, or that, gee, a soldier would like a gun. A soldier wants his life saved. He doesn't want to get killed. And his most important functional feature is, I want a gun that's going to protect me the best way I can when I go into enemy combat and protect the United States. Okay. Why don't you save the balance of your time? Thank you. For rebuttal. May I sit here? Yes, of course. May it please the Court, Counsel, it's a pleasure to be here today. This is a case where the district court's decision should be affirmed. The review is limited discretionary. In this case, the issues pertaining to the .249, M249, and the P90 were actually raised in the first preliminary injunction proceeding. This is not before this Court, and they have not appealed. The Court heard extensive argument about these issues. In fairness to the defendant, allowed additional briefing. And in fairness to the defendant, after this Court's C-call decision, asked for supplemental briefing and then waited for that until it made a ruling. Under the circumstances, the Court's question about the standard of review is very appropriate here. The Court was careful, did its job. There are no legal issues. There are purely factual issues. And the Court's task, then, is typically when they get it right on the law, that's when the inquiry ends. And only if there is clear error, and there is not in this case, is there room to reverse and vacate. In this particular situation, all of the facts are included. I understand. Is there a case? For the most part, the cases about functionalities, I understand it. Yes. Existing instances in which somebody else is producing a case with something that has the same functionality. Here, it's a peculiar case, as I said before, and I understand that it hasn't been litigated that way. But is there another case like it where the knockoff is a non-functional in the same way? It's not meant to be. The closest case that I can come to, I think it is a very great question, as all the questions are. But the GMC v. Lanyard case is the closest that comes to it. It was cited by the district court in the order on the first preliminary injunction case. There you had the military hummer, and that we all have seen those. They're very unique. And, of course, the defendant went through each and every element while the roof protects you from rain and the windows are designed in a specific way and the grill allows air to come in. Each of the components they dissected, and the court said, and it was a toy, effectively a toy hummer, that was trading off the goodwill and the name and reputation of GMC's hummer. The court said, no, even in that context. I do think it's critical to the analysis when you look at whether trade dress is protectable. The Qualitex case that, of course, this Court has filed is a Supreme Court decision where the Court is trying to decide, okay, where are the boundary lines when we're talking about trade dress protection? And quoting the Inwood decision, it said if a product's feature is functional, it cannot serve as a trademark if it is essential to the use or purpose of the article. And then it goes on. That is, if exclusive use of the feature would put competitors at a significant, non-reputational disadvantage. That's where your question really comes, is why are they copying? That's the question you need to ask. Is it because of performance, of the shape of this gun? When I first saw the P90, I couldn't believe it was really a gun. It was so unique. Bordering on that line of distinctiveness is very close all by itself. Why are they copying? Because they're famous FNH guns that the soldiers do find are really cool. They are great guns. That's why there is not a shred of evidence to support that they copied the designs because it functions better in that shape. So when you look at the context, if we were back in 1980 or 1990, when these guns were first developed, and you had a manufacturer, H&K, a competitor of FN Herstal, said, we have to copy this gun because it's the best way to get this performance. That was the case in Leatherman. That was the case in Good Disc Golf. That was the case in the other cases where this Court and the Supreme Court said, no, there isn't protectability. In this case, you have the reason for copying is the fame. They want to copy. Kagan. But that doesn't really fit into the doctrine. Or it doesn't fit into the doctrine the way you're arguing. That's what's bothering me. In other words, if we're going to litigate this case on the basis that the usual standards apply, and the question is, goes back to the original product and what's functional about it, and not to the question of who's copying it and why, then I'm not sure that this distinction, which feels very different, actually makes a difference. And you still have to stand here and tell us, and it would be helpful to me if you did, exactly what about this gun is not functional. Well, the gun, first of all, the standard of review is, is there record to support the district court's finding that the guns are nonfunctional. So what in the record specifically? I mean, I found both sets of briefs kind of at one level of generality higher than was useful to me in terms of what specifically is nonfunctional about the design of this gun. The basic issue here is the overall selection of the features. As indicated in the Klicks case, it's a very good example of where you don't dissect. The court said it's a warning signal if you start dissecting each individual feature when you're looking at the overall view of it. So what is nonfunctional about it? It is nonfunctional because it is as the court found. It is arbitrary. It is ornamental. It has. But it's arbitrary and ornamental. It is in the overall shape of it. Let's take the P90, for example. The specific arbitrary features of the P90 include the thumb hole acting as a pistol grip, the oversized trigger guard, smooth contours, the small bullpup configuration, the horizontally mounted feeding system, and the gun's overall dimensions and shape. So you will not find anything remotely similar in look to the P90. And that is unique. That's what the district court found. And important in the record, we've got the John Steele original declaration that talks about the licensing. You've got his fourth declaration that is pertinent to the C cult factors. One more point that's really critical to the issue the court raises. This is the only case I am aware of where you have the asserted trade dress and there's actually value preexisting and a right to the design preexisting to the case. In most situations, you have a competitor trying to fend off a competitor by arguing trade dress. Here, FN Herstal, it's in the record, it's a 25-page single-space license agreement where they're paying, CyberGun is paying FN Herstal 5% royalty. Now, I do a fair amount of patent work. A 5% royalty is a big royalty for patents. Here, for the design itself, you've got two independent parties in commerce saying, this design is protectable, this design is worth a 5% royalty. So we're not trying to create a value, create a right out of thin air to prevent competition because something works better. And that's the key question that the case law asks in regard to functionality. Is there consumer demand for, what's the actual benefit the consumer wants? Our declarations from John Steele and Patrick Boshars is that the demand is for the gun and the fame of the gun. And there is no contrary evidence in the record. The other issue is the overall design. Does it work better? That's the C called question. Does it work better than alternative designs? And our testimony in the record said this works no better than any other design. It is an arbitrary thing. Again, if it happened, if we had a real competitor in the gun industry. Are there other bullpup-type weapons out there on the market? What other bullpup-type? Like this P90. Yeah. I would say Uzi is an example. There's an Uzi. There's exhibits 11, 12, and 13 of David N.'s declaration provide something. In a military sense, what's the purpose and why would the military officer want to carry a P90? A military officer would want to carry a P90 from the perspective of this case because it has a great look and feel. It's stylish. I think there is a market for a smaller bullpup. I think it's more a smaller type of a gun so the width of it isn't as long. If you're in a situation where you're secret service, that's one of the customers. And so you have alternative designs. Is there any evidence in the record that this design is the most advantageous way of accomplishing? No. Whatever it is, this kind of bullpup weapon is intended to accomplish? That is correct. The declarations that they submitted of David N. and Mr. Kent do not say this is in this configuration because it works better in this shape. And that's the real question C asks. Now, in contrast, the Patrick Beauchart's deposition and John Steele declaration say it doesn't work any better in this shape. They've copied it because they want reputation-related advantage in competition to sell the real deal when it's a Chinese and Taiwanese knockoff of the real licensed product. Could I shift your focus just a bit? Yes. One of the factors in the preliminary injunction analysis is irreparable harm. And it looks like what the district court did here was utilize a presumption of irreparable harm. Under our case law and under the Supreme Court's case law in eBay, it doesn't seem to be correct. I would respectfully disagree that the court relied on a presumption. The language in the order He makes a short little statement and then he says that we presume having found a likelihood of success on the merits. Right. The court specifically states in the order on He says to Maryland. That's absolutely correct. Now, I would say the important part on irreparable harm is the court says I find irreparable harm, and therefore it doesn't say I presume irreparable harm, and that's on page 13 of the record. And therefore, I think the court's task is to look in the record, is there support for that, and the support for it is really unchallenged. Your question is a fair question. Maryland was decided after eBay, but the later decision in Flexible where the court It's a per curiam decision where it calls into question whether Maryland really addressed that issue and finds that Maryland's not precedential. If I were guessing, I'd say this Court, when it squarely is presented in the Supreme Court, would probably say there is no presumption. The order really seems to make that pretty clear. I think that's the way it's going. And at the end of the day, the court didn't rely on it. The court cited the case and put a parenthetical but said I find. That's what's critical here. We did not rely on a presumption, though we argued Maryland was after eBay and therefore support the argument. We argued here are the facts showing irreparable harm. You have a licensing investment, a company that can sell a product for less money. It's a cheap imitation. In some cases, it's half the cost. We're losing market share. We lose control of our goodwill. We lose control of the elements that are critical to a trademark holder. So the evidence is absolutely in the record, and there is no challenge to it by the defendant. The only thing they say is, gee, it would harm us because we can't sell products that the court has found infringe, and the law on that is very clear, that if you're going to sell a product, you're going to have to pay a little, if any, weight. And importantly, they are still in business. They are selling. There are dozens and dozens of examples of guns that don't pilfer the design of the P90 and the M249. The issues relating to distinctiveness are important here. Again, it's critical. The Wal-Mart case teaches that something is not inherently distinctive when it's trade dress. That's the Supreme Court Wal-Mart decision. And here the Court painstakingly went through the elements of distinctiveness and the evidence, which was virtually unchallenged, of decades-long sales, millions of dollars in sales. Volume was high, 20,000 customers. Again, military sales to U.S. SOCOM, to the Secret Service of these weapons. Frankly, it's a unique case because my son, who lives in Provo, actually informed me about the video game use when I told him about the case and the specific guns, and he told me all about them. Oh, yeah, I understand the SCAR, and this is what it does, and this is what it looks like, and it's an FN gun. You've got millions of these video users that help establish secondary meaning. It's famous in movies and TVs. Why? Because they have that look and feel and that style. And that is the reason why CyberGun saw the value and has paid substantial money over a significant period of time, and it's doing it the right way. When you have a competitor that wants to coattail or hijack the goodwill and copy it, that's wrong. The record's clear. The law was properly stated. The Court did not abuse its discretion. In fact, I would say the Court was exemplary in the way it handled the matter. Thank you very much for your time. Just one last procedural question. What's the status of the case in the district? Status of the case. Discovery's just closed, and we are in the expert phase, and summary judgment briefing will happen shortly. So it's progressing in the district. Yeah, progressing well. I'm not hearing you. I'm sorry. Hold on. Let's start over. We need the mic. No, it's okay. It's not your fault. All right. To answer your question, the judge who issued these orders, the temporary restraining orders, has taken serious notice of the fact that the district and the case has been reassigned to a new judge. So the status is we don't know when the trial is going to take place. Sometime next year is a reasonable guess, but we don't know. There's plenty of time for this Court to decide. I want to correct a few things that I believe were mistaken. One, with respect to the bullpup, the design, there is a function to it. It's used by the Secret Service to protect people like the President of the United States. The gun is a concealed weapon held by the Secret Service. The reason for its smooth contours is so when you pull it out from your jacket or from your coat, you want to have the ability to shoot the assassin before he gets to the President. That one millisecond makes all the difference in the world. So it has that smooth contour configuration to serve the function of not snagging on a coat. There was also an argument stated that there was a lot of argument concerning the injunction for the two weapons that are at issue here. That's not correct. We were first put on notice of the alleged allegation that there was a violation on February 1, 2012, at the end of the first preliminary injunction hearing, where we were served with a TRO and less than a day to respond. And then there wasn't a formal argument a few days later. And at the end of the argument, which dealt with a different weapon, a SCAR that's not at issue here, a defense attorney said, oh, by the way, can we also enjoin the M249 and the P90? And Judge George said, no, that's not fair. The defendants have to have a fair opportunity to defend themselves. That's all that was said at that first time. And that's the first time we were put on notice that they felt we were violating any rights in the guns that are at issue in this case. So I'm not understanding what difference that makes. It makes a difference because we were selling the guns for at least seven years before that. Nobody ever came to us and said, hey, you know, you shouldn't stop. You should stop selling this thing. They acquiesced to our sale of the guns for seven years. And our client made the market in this airsoft. And now, years later, now the plaintiffs want to come and take that market away from them, saying, in effect, thanks for making the market. I think we'll take it now. And that I feel fundamentally is unfair. Also, with respect to the General Motors case, remember that. You're dealing with a Hummer and a little toy model. Here you're dealing with two totally different weapons. And as you correctly said, the fact that FN Herstal is selling firearms, they're not going to lose one penny of sales for somebody else selling an airsoft rifle. Totally different. Kagan. But they're going to lose the licensing. That's what they're losing. Well, they may lose. Not really, because, as I say, my client was selling these things from the predecessor whom Cybergun purchased and were introduced into this market by Cybergun's predecessor. And they've been selling the guns for seven years. Cybergun has been in the airsoft business, who never raised one word of complaint until February 1, 2012. There's a clear latch of defense, which the judge totally ignored and never entered into. All right. Thank you. Your time is up. Thank you very much. We appreciate your arguments. Defense counsel, safe travels back. Thank you all. That ends our session for today, and we'll be in recess until tomorrow.
judges: Fernandez, Paez, Berzon